## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2017, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ariel M. Childress,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 29, 2017

Court of Appeals Case No.
84A01-1612-CR-2938

Appeal from the Vigo Superior Court

The Honorable John T. Roach, Judge

Trial Court Cause No.
84D01-1210-FB-3384

**Pyle, Judge.**

# Statement of the Case

Ariel M. Childress ("Childress") appeals the revocation of his probation. Childress argues that the trial court committed fundamental error by admitting hearsay evidence and relying upon it to find that Childress had violated his probation. Childress cannot show that fundamental error occurred because he admitted that he had violated the two conditions of his probation as alleged by the State. Because there was evidence sufficient to show that Childress violated the terms of his probation, we affirm the trial court's revocation of his probation.

Affirmed.

# Issue

Whether the trial court committed fundamental error by admitting hearsay evidence during the probation revocation hearing.

# Facts

In October 2012, the State charged Childress with three counts of Class B felony arson. A year later, in October 2013, Childress entered into a written plea agreement for this cause and two others. In this cause, he pled guilty as charged to the three counts of Class B felony arson. In exchange, the State agreed to recommend that the trial court impose, for all three Class B felony convictions, concurrent sentences of fourteen (14) years, with six (6) years executed on work release under the supervision of Vigo County Community Corrections as a direct commitment and eight (8) years suspended to probation.

The trial court accepted Childress' plea and imposed the sentence contained in the plea agreement.[1]

[4] In June 2014, the State filed a petition to revoke Childress' direct placement in the work release program. This petition contained numerous alleged violations, including smoking K2 and cigarettes, refusing to give a urine sample, failing to pay work release fees, and failing to follow various rules of the work release program. After a hearing, Childress admitted that he had violated the terms of his work release as alleged, and the trial court ordered him to serve his six (6) year executed sentence in the Indiana Department of Correction. A little more than one year later, in November 2015, the trial court approved Childress' transfer to a community transition program.

[5] On April 8, 2016, Childress began serving his probationary term. A few weeks later, on April 25, 2016, the State filed a notice of probation violation, alleging that Childress had violated his probation by committing new criminal offenses. Specifically, the State alleged that Childress had been charged with the following: Class A misdemeanor operating a vehicle while intoxicated endangering a person; and two counts of Class C misdemeanor operating a vehicle with a controlled substance or its metabolite in the body. Childress

---

[1] Childress' plea agreement also provided that he would plead guilty to one count of Class B felony burglary and seven counts of Class D felony receiving stolen property in a second cause, 84D01-1210-FB-3385 ("Cause 3385"), and that his charges from a third cause, 84D01-1208-FD-2539, were to be dismissed. Additionally, the plea agreement provided that Childress' sentence in Cause 3385 would be the same aggregate term as he received in this cause (fourteen (14) years, with six (6) years executed on work release as a direct commitment and eight (8) years suspended to probation) and would be served concurrently to this cause.

entered an agreement to admit that he had violated probation by using methamphetamine in exchange for his placement in the Jail Linkage Program to be followed by placement into a sober living facility as a condition of probation. The trial court accepted the agreement.

[6] On August 2, 2016, after Childress had successfully completed the Jail Linkage Program, the trial court ordered that he be returned to probation and placed in a sober living program at Club Soda. The trial court specified that Childress was to complete this program as an additional probation condition.

[7] Later that month, on August 31, 2016, Childress called his probation officer and informed the officer that he had been kicked out of Club Soda. The probation officer contacted the Club Soda program director, Kevin Ball ("Ball"), and discovered that Childress had not been following the house rules. Ball gave Childress another chance and allowed him back into the program.

[8] Less than two months later, on October 2, 2016, Childress was unsuccessfully discharged from the sober living program at Club Soda. Two days later, Childress called his probation officer to tell the officer that he had again been kicked out of Club Soda. That same day, Ball talked with the probation officer and faxed the probation officer a letter, stating that Childress had been "kicked out" of the program and that he "was not welcome back at Club Soda." (Tr. Vol. 2 at 11, 12). Specifically, the letter provided, in relevant part, that Childress had been "discharged on 10/02/2016 due to [v]iolating Club Soda

rules" and that Childress been "caught threatening to cause bodily harm to another individual that d[id] not reside at Club Soda." (State's Ex. 1).

[9] Thereafter, on October 12, 2016, the probation officer ordered Childress to have a drug screen. Childress tested positive for methamphetamine and marijuana. The State then filed a second notice of probation violation, alleging that Childress had violated his probation by failing to complete the program at Club Soda and by testing positive for drugs.

[10] The trial court held a probation revocation hearing on November 28, 2016. During the hearing, Childress's probation officer testified that Childress had been unsuccessfully discharged from the sober living program at Club Soda and that he had tested positive for methamphetamine and THC. Childress did not object to the probation officer's testimony. The State also introduced State's Exhibit 1, the Club Soda discharge letter, and State's Exhibit 2, the positive drug screen results. Childress stated that he had "no objection" to the admission of either exhibit. (Tr. Vol. 2 at 12, 13).

[11] During the hearing, Childress testified and admitted that he had violated his probation by using drugs and by being discharged from the Club Soda program. At the end of the hearing, the trial court stated that "the evidence clearly establishe[d] . . . [that Childress had] violated probation by drug use and getting kicked out of Club Soda[.]" (Tr. Vol. 2 at 27). The trial court revoked Childress' probation and ordered him to serve his previously suspended eight (8) year sentence in the Indiana Department of Correction. The trial court

recommended that Childress be placed in purposeful incarceration and a CLIFF program. The trial court also informed Childress that it would be willing to consider modifying Childress' sentence after he had served one-half of his sentence and had successfully completed the CLIFF program. Childress now appeals.

# Decision

[12] Childress challenges the trial court's determination that he violated probation by using drugs and by failing to successfully complete the sober living program at Club Soda. Specifically, he contends that the trial court committed fundamental error by admitting hearsay evidence during the revocation hearing and then using that evidence to find that he had violated the terms of his probation.

[13] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). A trial court has "discretion whether to grant [probation], under what conditions, and whether to revoke it if conditions are violated." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied*. "The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution." *Id*. Accordingly, "courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial." *Id*.; *see also* Ind. Evidence Rule 101(d)(2) (explaining that the Indiana Rules of Evidence are not applicable in probation proceedings).

Nevertheless, "[t]his does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes*, 868 N.E.2d at 440. In *Reyes*, the Indiana Supreme Court adopted the "substantial trustworthiness test" as the means for determining whether hearsay evidence should be admitted at a probation revocation hearing. *Id.* at 441. When applying the substantial trustworthiness test, "'ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses.'" *Id.* at 442 (quoting *United States v. Kelley,* 446 F.3d 688, 693 (7th Cir. 2006)) (brackets and ellipses in original).

[14] Childress contends that the trial court erred when it allowed the admission of hearsay testimony—specifically, the probation officer's testimony and State's Exhibits 1 and 2—without explaining on the record why the evidence should be considered trustworthy as recommended by our supreme court in *Reyes*. However, Childress stated that he had "no objection" to this evidence, and the trial court did not make a substantial trustworthiness determination. (Tr. Vol. 2 at 12, 13). As a result of Childress' failure to object, he has waived a challenge to the admission of this evidence on appeal. *McQueen v. State*, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

[15] Seeking to avoid procedural default, Childress argues that the admission of this hearsay evidence was fundamental error. The fundamental error exception is "extremely narrow[.]" *McQueen*, 862 N.E.2d at 1241. To constitute fundamental error, "[t]he error must be so prejudicial to the rights of the

defendant as to make a fair trial impossible." *Carden*, 873 N.E.2d at 164. The fundamental error exception "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *McQueen*, 862 N.E.2d at 1241. "'For error to be 'fundamental,' prejudice to the defendant is required.'" *Id.* (quoting *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind. 2003)).

[16] Childress contends that the admission of the challenged hearsay evidence constituted fundamental error because the evidence was not substantially trustworthy under *Reyes* and was "the only evidence" upon which the trial court could have found that he had violated his probation. (Childress' Br. at 10) (quoting *Carden v. State*, 873 N.E.2d 160 (Ind. Ct. App. 2007)).

[17] Here, however, we need not determine if the challenged evidence was substantially trustworthy under *Reyes*. Even if we were to decide that the evidence had been erroneously admitted, any such error would not rise to the level of fundamental error. Instead, it would constitute harmless error. *See, e.g.*, *Figures v. State,* 920 N.E.2d 267, 273 (Ind. Ct. App. 2010) (explaining that admission of evidence in a probation revocation hearing is harmless error if there are independent grounds for a court to revoke probation). Contrary to Childress' argument, the challenged evidence was not "the only evidence" presented to show that he had violated the conditions of his probation. Childress admitted during the hearing that he had violated his probation by using drugs and by being discharged from the sober living program at Club Soda. Thus, he cannot show that he was prejudiced by the admission of the

challenged evidence, and the admission of such evidence was harmless. *See, e.g.*, *McQueen*, 862 N.E.2d at 1242 (holding that the defendant had failed to show the prejudice necessary for his fundamental error challenge to the admission of a toxicology report where he testified that he had violated conditions of probation). *See also McFall v. State*, 71 N.E.3d 383, 388-89 (Ind. Ct. App. 2017) (explaining that a "questionable foundation for the admissibility of evidence may be cured by later testimony" and holding that any error in the admission of the challenged evidence was "rendered harmless" by the defendant's subsequent testimony). *Cf. Carden*, 873 N.E.2d at 164-65 (holding that the admission of the challenged hearsay testimony constituted fundamental error where the testimony was not substantially trustworthy and was "the *only* evidence" used to revoke the defendant's probation). Because there was evidence sufficient to show that Childress violated the terms of his probation by using drugs and failing to successfully complete the sober living program, we affirm the trial court's revocation of his probation.

[18]    Affirmed.[2]

May, J., and Brown, J., concur.

---

[2] In his reply brief, Childress requests that we strike a portion of the State's brief. Specifically, he seeks to have this Court strike the State's argument that suggested that Childress' lack of objection to the evidence may have been a strategic decision by Childress' counsel. We make no conclusion regarding the reason for counsel's lack of objection, and we deny Childress' request to strike this portion of the State's brief.